ELEANOR P. SHAW, complainant-respondent,

*v.*

G. B. BEAUMONT COMPANY, defendant-appellant.

[Argued March 9th, 1917. Decided October 11th, 1917.]

1. It is not an inflexible rule that, when the court of chancery, having once acquired jurisdiction for one purpose, it is bound to retain the case for complete relief; whether the court of chancery will do so, so as to include all the points in controversy between the parties, rests somewhat in the discretion of the chancellor. The rule applied in this case, where the court of chancery, under an agreement had jurisdiction to make an accounting, excluded therefrom items under two former agreements, which were cognizable in a court of law, *held* proper.

2. A mortgagee in possession is not entitled to compensation for services rendered for renting the premises, in this case an apartment-house.

3. Under the terms of an agreement, "to receive for its entire compensation for its services in so doing [*i. e.*, building] a sum equal to ten per cent. of the entire cost of such building," a corporation is not entitled to receive for its services, in addition to the ten per cent. called for by the terms of the contract, the proportion of the salaries of its officers and office employes, while supervising the construction of the building, nor ten per cent. on the cost of financing the building when the disbursements in connection therewith have been allowed, nor for telephone calls, carfare, postage, stationery—they are office charges of the defendant corporation; nor tools used in the construction of the building—they are part of the equipment of a contractor.

On appeal from a decree of the court of chancery advised by Charles J. Roe, advisory master.

*Mr. William A. Lewis, Mr. Gilbert Collins* and *Mr. Edward A. Markley,* for the appellant.

*Messrs. Hartshorne, Insley & Leake* and *Mr. William E. Decker,* for the respondent.

The opinion of the court was delivered by

BLACK, J.

The fundamental question in this case is one of equitable jurisdiction. The litigation grows out of an agreement made between the parties to this suit, on the 26th day of February, 1913. The complainant being seized of lands at the corner of Highland avenue and the boulevard, in Jersey City, New Jersey, entered into an agreement on the above date with the defendant, to erect an apartment-house on a part thereof; under the terms of the agreement the complainant conveyed the lands to the defendant and also gave the defendant certain moneys. the lands to be reconveyed to her on completion of the building and payment thereof, the cost to be ascertained by an accounting to be made by the defendant. The defendant, having erected and completed the apartment-house on part of the land, sold and mortgaged other parts, in accordance with the terms of the agreement, retained title to the remainder and collected rents from apartments when rented. The defendant, having failed to render

a just and true account, the complainant exhibited her bill of complaint in the court below and prayed (*a*) for an accounting; (*b*) a reconveyance of the lands held by the defendant; (*c*) a receiver to collect the rents pending the litigation. The case was brought to trial before Advisory Master Charles J. Roe, resulting in a decree for the complainant and the sum of five thousand five hundred and forty dollars and thirty-five cents ($5,540.35) to be paid by the defendant to the complainant, hence the defendant brings this appeal, alleging seven specifications as grounds of appeal. The first and only one that requires any extended discussion relates to the ruling of the advisory master, which limited the scope of the accounting to the agreement of February 26th, 1913. The appellant urges that the master should have included the transactions between the complainant and the defendant, under two prior written agreements, viz., August 27th and November 22d, 1912. They referred, speaking generally, to the same subject, viz., that of building. They were both abandoned, no work being done under them, except the preparing of plans for a building, under the agreement of August 27th, 1912, and the payment of five hundred and forty dollars ($540) to the appellant. The accounting was a long and laborious one, involving something over one hundred thousand dollars. The record is also voluminous. The clause in the agreement of February 26th, 1913, providing for the conveyance of the property and the holding of it by the defendant, until it should be paid, is the distinguishing feature between that agreement and the two preceding agreements referred to above. That clause is the sole ground, or the special equity, which gives the court of chancery jurisdiction over this cause. The question, then, is, Did the master err in limiting the scope of the accounting as above indicated? One other fact is urged, as having some significance, which may be mentioned, that is the parties stipulated before the master authorizing him to consider all the matters in dispute and adjudicate thereon (and waiving a jury trial on any such matters in the brief), but it may be said, in passing, that such a stipulation imposes no obligation on the court of chancery to decide those issues.

It may be conceded that a court of chancery having once ac-

quired jurisdiction of a cause will do all in its power to settle all the rights of all the parties in the matter of any controversy, but this is not an inflexible rule, which the court of chancery is bound to follow in every case that comes before it.

The rule to be applied was succinctly stated by Vice-Chancellor Reed, in the case of *Stout* v. *Phœnix Assurance Co. of London, 65 N. J. Eq. 573,* in these words: "A court of equity in this state can deal with legal questions only, as far as their decision is incidental or essential to the determination of some equitable question. Merely because a court of equity has acquired jurisdiction for one purpose, it is not empowered to retain the case for complete relief." Chief-Justice Beasley, speaking for this court, said: "It is not true, by any means, that when a court of conscience has acquired cognizance for one purpose, it thereby acquires cognizance over the entire controversy for all purposes." *Lodor* v. *McGovern, 48 N. J. Eq. 279.*

The principle is further illustrated in our courts in the cases of *Little* v. *Cooper, 10 N. J. Eq. 273; Red Jacket Tribe* v. *Hoff, 33 N. J. Eq. 441.*

The subject is discussed, the principle illustrated and applied in many cases and by text-writers, such as *1 Story Eq. Jur.* ¶ *72; Pom. Eq.* ¶ *181; 10 R. C. L. 374* ¶ *123.*

The extending of the jurisdiction of chancery so as to include all the points in controversy, rests somewhat in the discretion of the chancellor, especially so where the rights involved grow out of other contracts. In this case the defendant has an adequate and complete remedy at law, for all the items involved under the two former contracts, including damages for their alleged breach. The court of chancery cannot retain jurisdiction for the purpose of granting a purely legal remedy or to try a claim for unliquidated damages. *Trotter* v. *Heckscher, 40 N. J. Eq. 657; Phillips* v. *Pullen, 45 N. J. Eq. 157.*

The bill of complaint in this suit was filed April 22d, 1915. The present Chancery act (*P. L. 1915 p. 184* ¶ *8*), by which a jury trial shall be deemed to be waived, unless demanded in the pleadings, does not apply to this case. *Ibid.* ¶ *12.*

We, therefore, think that the master was right in confining

the scope of the accounting to the agreement of February 26th, 1913.

It is next urged that the defendant should not have been regarded as a mortgagee in possession, to the extent of disallowing it any compensation for services rendered to complainant for renting the apartments under the authorization contained in a letter dated June 24th, 1913, after November 1st, 1913.

It is sufficient to say on this point that the ruling of the master is amply sustained by the authorities: *Clark* v. *Smith, 1 N. J. Eq. 137;* *Elmer* v. *Loper, 25 N. J. Eq. 482;* *Vanderhaise* v. *Hugues, 13 N. J. Eq. 410;* *Moore* v. *Cable, 1 Johns. Ch. 388;* *2 Jones Mort.* ¶ *1114.*

·The third point is without legal merit, it requires no discussion.

The next three points involve a construction of the clause in the contract, which provides that the defendant is "to receive for its entire compensation for its services in so doing (*i. e.,* building) a sum equal to ten per cent. of the entire cost of such building and to complete the same by October 1st. 1913," the entire cost of the building, including the ten per cent. compensation, shall not exceed forty-two thousand dollars ($42,000). The master allowed the defendant the sum of three thousand four hundred and seventy dollars and fifty cents ($3,470.50), ten per cent. on the cost of the building, for its services in constructing the building, under this clause in the contract.

The appellant now claims that in addition thereto the master should have allowed a proportion of the salaries paid by the defendant to its officers and office employes, to its president, Mr. Beaumont, at the rate of nineteen dollars and twenty cents ($19.20) per day; to its secretary, Mr. Rowan, at the rate of thirty-five dollars ($35) per week; to its messenger, or office boy, Mr. Stanley, at the rate of eighteen dollars ($18) per week; while supervising or superintending the construction of the building.

Also, it is contended by the appellant that the master should have allowed ten per cent. for services performed, on the cost of financing the apartment-house, amounting to nine hundred dollars ($900). But disbursements in connection with the mort-

gage loans and sales of land were allowed by the master; also the appellant claims items for telephone calls, carfare, postage and stationery; tools, such as ladders, mortar tubs, &c., used in the construction of the building. Without stating in detail the entire contract under which the appellant claims such items, it is sufficient to say that we think the master properly construed the contract and made a correct application of its terms to the items in controversy in this case, by excluding all these various items above indicated as not being included within the provisions of the contract.

The reasoning of the master is quite satisfactory in the memorandum filed by him in the court below, excluding these various items. The contract provides for no independent supervision. The defendant cannot charge the complainant with a proportion of the salaries that it pays its officers for supervising or superintending the building. The defendant is the contracting party; it had a right to employ whoever it chose to superintend the building on its part, the work of the laborers employed by it. So, with the other items enumerated above, such as telephone calls, not allowed by the master, they were office charges of the defendant corporation; they were not costs and expenses of the building. So, the tools used in the construction of the building, they were a part of the equipment of the contractor—a contractor, when he agrees to build must in the absence of a contrary agreement, furnish all the tools and necessary appliances for the work contracted to be done.

Objection is also made to an allowance of a counsel fee of fifteen hundred dollars ($1,500) to the complainant (*P. L. 1910 p. 427*); permits the allowance of a counsel fee by the chancellor of such amount as shall seem to him reasonable and proper. After examining the record in this case, which is voluminous, involving a large sum of money, we cannot say that a counsel fee of such an amount was either improper or unreasonable.

The decree of the court of chancery is affirmed, with costs.

BERGEN, J. (concurring with modifications).

The complainant by a letter dated June 24th, 1913, addressed to the defendant authorized it

"To run all apartments, making such arrangements as in your judgment may seem advisable. Also such other arrangements as may be necessary in connection with the furnishing and running of apartments, such cost as may be incurred thereby to be added to the contract allowance."

This separate agreement manifestly authorized the defendants to find tenants and to furnish the apartments, the cost of which was made subject to the ten per cent. allowance. The word "cost" must refer to the furnishings and expenses of running the apartments. The master allowed the cost of painting, janitor's wages, coal and gas, nine refrigerators and window shades, but eliminated all cost which arose subsequent to the 1st day of November, 1913, when he said the building was completed and that thereafter the defendant was not entitled to ten per cent. on any furnishings or expenditures upon the ground that the building being completed, the defendant was a mortgagee in possession. If it be granted that the defendant was a mortgagee in possession, it was, nevertheless, entitled to continue its account until the property was turned over and could not be deprived of the benefit of the written contract that it was to be paid ten per cent. upon the cost of the furnishings. It is impossible to tell from this account what proportion of the furnishings were allowed; none appear in this account except the refrigerators at $197 and the window shades at $178, whereas the total cost of the furnishings was $1,746.08. These furnishings were not a part of the original contract, and it would make no difference whether they were furnished after the completion of the building or before, they were to be paid for with the addition of ten per cent. on their cost, and I do not see upon what theory we can take a part of such furnishings and include them in this account and exclude the balance to be a subject of future litigation.

I think that either the subject-matter of this latter contract should be wholly eliminated with a statement that it is not to be included in the decree, or the whole amount should be included, and, therefore, the decree should be modified to this extent. I vote to affirm with this modification.

*For affirmance* — SWAYZE, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR—8.

*For reversal*—GARRISON, TRENCHARD—2.

*For modification*—BERGEN, GARDNER—2.