The complainant in the operation of its business occupies a portion of premises owned by defendant. The defendant's property consists of a lot of land, upon which is erected a building of brick construction fronting on Morris Avenue, Elizabeth, occupied by him and in which he conducts a hardware business. In the rear of the premises the complainant occupies a two-story building in which it conducts its business.
Complainant's occupancy commenced on or about October 16th, 1942, when the defendant wrote a letter under that date as follows:
"C.C. Cawthorne Co., Inc. 330 Morris Avenue Elizabeth, New Jersey
Attention: Mr. C.C. Cawthorne. President
Dear Mr. Cawthorne:
In accordance with your request as to lease and terms of agreement, I wish to confirm for the purpose of records in your office, which may be shown to the Reconstruction Finance Corporation or their agents, or the Navy, or the Army, for the purpose of establishing the fact that the premises rented by you can be continued to be rented for the duration of the existing war and for nine months after on the present terms of rent. Namely, $40.00 per month.
It is understood that such changes as may be deemed necessary to permit war work in this building will be allowed, the expense for which is to be borne by C.C. Cawthorne Company, Inc. It is further agreed that they will not, in any way, damage the building and that any such structural changes that may be made in the building shall become my property, with the exception of such fixtures as special exhaust fans, circulating heating units, and so forth, which are not considered permanent fixtures.
I further agree to cooperate with the Armed Forces or their agents or representatives in any way that it may be deemed necessary for the benefit of C.C. Cawthorne Company, Inc. providing the above does not concur an expense or obligation on my part.
Very truly yours,
LOUIS J. SEEGER
Louis J. Seeger" *Page 220 
In February, 1944, substantial alterations, improvements and repairs to the building in the rear became necessary, and the rent was increased as appears by letter written by complainant to the defendant dated November 24th, 1943:
"Mr. Louis Seeger 330 Morris Avenue Elizabeth, New Jersey
Dear Mr. Seeger:
In accordance with our understanding, we are enclosing a check for $55.00, an increase of $15.00. This is to be in agreement with your letter of October 16, 1942.
We further agree that if you will present your water bill to this office we will make a pro-rata payment to your bills over and above that prior to our occupancy.
If this is agreeable to you, please sign the duplicate copy and return to us.
Very truly yours, C.C. CAWTHORNE CO., INC. C.C. Cawthorne CCC:cs
Accepted by:
LOUIS J. SEEGER date 11/24/43"
Thereafter sometime in February, 1944, and before such alterations were made, the defendant submitted to complainant the following memorandum:
 "ARTICLES of AGREEMENT BETWEEN LOUIS J. SEEGER And C.C. CAWTHORNE, Trading As Owner C.C. CAWTHORNE, INC. Tenant.
 In Reference To Property Known As 330 Morris Ave., Elizabeth, N.J.
PARTY OF THE SECOND PART NAMELY, C.C. CAWTHORNE, AGREES TO PAY ($55) FIFTY-FIVE DOLLARS per month for the space which he now occupies for the duration of the War and three months thereafter, also to keep in repair said premises to the satisfaction of the owner, also to make any changes required by law to operate as a machine shop or any other manufacturing purpose at his own expense, said changes to become and remain a part of the property. *Page 221 
Party of the second part agrees further to pay the cost of water exceeding $7.50 per quarter, also additional insurance caused by any changes, also additional taxes caused by any changes; the amount of additional insurance and taxes to be paid by the party of the second part is to be based on an average of the two last years just ended.
Party of the second part agrees further to use driveway as an entrance and exit to his place of business, and to keep same clear at all times: this driveway is not to be used, under any consideration, as a means to gain entrance to any adjoining properties.
Party of the second part agrees further that should he desire to make any changes to the structure of the building, or add to same; he will first submit a plan and specification to the owner and receive his written consent to make such changes.
 * * * * * * * *
PARTY OF THE FIRST PART NAMELY, LOUIS J. SEEGER AGREES TO SELL to the party of the second party the above mentioned premises, at the end of the War or within three months thereafter, for the sum of ($40,000) FORTY THOUSAND DOLLARS NET CASH, ALL taxes (of any description) and other expenses involved at the time of settlement to be borne by the party of the second part namely C.C. Cawthorne. A cash bond of ($5,000) FIVE THOUSAND DOLLARS is to be furnished by the party of the second part as a binder and token.
The party of the second part agrees to forfeit the bond herein mentioned should he fail to exercise the purchase privileges within the specified time.
The party of the second part also agrees that should he take possession of the property herein mentioned, he will grant to the party of the first part the privilege to lease the premises which he now occupies for a period of one year with an option of three years more. The rent for the first year to be ($50.00) Fifty Dollars per month and the remaining three years to be ($75.00) SEVENTY-FIVE DOLLARS per month should the advantage of the lease be taken, which would have to be in writing three months in advance prior to the ending of the first year. The party leasing would also give the owner a notice three months in advance of the ending of the first year should he desire to surrender the privileges of lease.
These articles of agreement can not be used in any way to obtain a lien against the property, nor can any contractor or government agency levy against said property for any consideration extended to the party of the second part, under the terms of this agreement."
The cash bond of $5,000 was never furnished by the complainant, nor am I satisfied from the evidence that it was ever tendered.
Relying upon the contents of the aforementioned memorandum, complainant brings suit for specific performance and a decree that defendant sell the premises described in the bill of complaint comprising the whole of the lands and all *Page 222 
the buildings for the sum of $40,000, and also prays (I assume in the alternative) that a lien be impressed for its benefit upon the lands and premises to the extent of expenditures made in the alterations, improvements and repairs to said property.
Decree for specific performance will not be made unless the existence and essential terms of the contract be clearly proved. It must be shown that a contract has been actually completed, for if it be reasonably doubtful whether the contract was finally closed, equity will not interfere by decreeing specific performance. Brown v. Brown, 33 N.J. Eq. 650; McKibbin v.Brown, 14 N.J. Eq. 13; affirmed, 15 N.J. Eq. 498.
This unsigned paper-writing discloses that a sale of the property was contemplated, but there the matter so far as the evidence discloses rested. A letter under date of May 18th, 1944, written by Mr. Lindabury of the firm of Herrigel, Lindabury 
Herrigel, to the defendant, says: "I am returning herewith your deed covering premises 330 Morris Avenue, Elizabeth, N.J., as I have now made a copy of the same for my files. Just as soon as I can possibly do so, I will prepare the agreement between you and Mr. Cawthorne and will present it to you for your examination and execution." This letter discloses that it was within contemplation of the parties that a formal contract was to be prepared and submitted for execution. No such contract was ever submitted or executed by the parties.
Where negotiations for the sale of real estate have been conducted by parol and specific performance is sought on the ground of part performance, the terms of the contract must appear clearly, definitely and unequivocally to the satisfaction of the court. Wharton v. Stoughtenburgh, 35 N.J. Eq. 266. Such performance must be clearly referable to the execution of the contract, and not to some other relation, in order to justify a decree of specific performance by a court of equity, notwithstanding the statute of frauds. Cooper v. Colson,66 N.J. Eq. 328; 58 Atl. Rep. 337; Brown v. Brown, supra; Wallace
v. Brown, 10 N.J. Eq. 308. *Page 223 
The complainant contends that his present possession of the property, and the fact that he caused repairs and improvements to be made to the property and paid for them, justifies a decree in his favor. Here, the improvements which complainant made became necessary to permit it to do the war work in which it was engaged. But it was understood, as appears by the defendant's letter under date of October 16th, 1942, that the expense thereof was to be borne by complainant and that such structural changes would become the property of the defendant with the exception of such fixtures as special exhaust fans, c., which were not to be considered permanent fixtures. Possession of the property by the vendee, or payment by it for repairs thereon, in order to constitute part performance of an alleged parol contract for the sale of real estate, must clearly appear to have been taken or made in pursuance and in execution of the contract, and to have resulted therefrom and not from any other relation. Cooper v.Colson, supra; Vreeland v. Vreeland, 53 N.J. Eq. 387;32 Atl. Rep. 3; Wharton v. Stoughtenburgh, supra; Brown v. Brown,supra; Wallace v. Brown, supra; Turkington v. Zuber, 100 N.J. Eq. 285; 134 Atl. Rep. 840.
The bill of complaint will be dismissed.
The defendant's counter-claim prays that since the court has taken jurisdiction of the "main dispute between the parties hereto, also take jurisdiction of the claim for rent and for possession made by the defendant." It prays decree for rental from June 1st, 1946, at the rate of double the yearly rental value for as long a time as same is detained, and for a decree for $70 upon a check of September 5th, 1945, with interest thereon to date. The counter-claim is based upon complainant's tenancy whereby it rented and now occupies the rear of the premises 330 Morris Avenue, the term of which rental was for and during the existence of the war and for nine months thereafter at $40 per month. The counter-claim alleges that on February 26th, 1946, the defendant gave notice in writing and demanded that complainant vacate the premises by "June 1st, 1946, which date was nine (9) months after the duration of the war" as provided for in the letter of October 16th, 1942, hereinabove set forth, complainant *Page 224 
having refused to vacate the premises on June 1st, 1946, and still holds possession after said demand and notice.
The counter-claim presents a purely legal question for which there is an adequate remedy at law. The mere fact that this court has acquired jurisdiction for one purpose, does not empower it to retain the case for complete relief. Hersh v. Rosensohn,125 N.J. Eq. 1; 5 Atl. Rep. 2d 877; affirmed, 127 N.J. Eq. 21.
This court can deal with legal questions only, as far as their decision is incidental or essential to the determination of some equitable relief. It is not empowered to retain the case for complete relief merely because it has acquired jurisdiction for one purpose. Shaw v. Beaumont Co., 88 N.J. Eq. 333;102 Atl. Rep. 151. Neither can counsel by mere silence confer upon this court the power to determine litigated matters which, under our judicial system, must be settled in a court of law, and so strip the law courts of jurisdiction conferred upon them. Weber v.L.G. Trucking Corp., 52 Atl. Rep. 2d 839.
The counter-claim is dismissed.