# VALDES v. LARRINAGA.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR PORTO RICO.

No. 343.   Argued May 4, 1914.—Decided May 25, 1914.

Although the contract for participation in profits involved in this case may not have created a partnership, as defined under § 1567, Civil Code of Porto Rico, it gave the party entitled to participate an equitable interest in the property involved which attached specifically

to the profits when they came into being. *Barnes* v. *Alexander*, 232 U. S. 117.

In such a case, if the party having the legal control of the property and profits abuses the fiduciary relation created by the contract, equitable relief is proper.

In this case it does not appear that the contract under which one who had formerly occupied a government office in Porto Rico rendered services in connection with obtaining a franchise from the local and Federal governments was improper or against public policy. *Hazelton* v. *Sheckells*, 202 U. S. 71, distinguished.

In this case *held*, that notwithstanding the forfeiture of an original grant and the final sale relating to a new but similar grant, as there was a continuous pursuit of the end achieved, one who was entitled to a share in the profits of the enterprise as originally conceived was entitled to share in the proceeds.

Where no error of magnitude is made by the court below in construing a contract for services executed in a foreign language and establishing the amount due thereunder, and only a translation of the contract is before this court, the decree will not be reversed.

THE facts, which involve the validity of a judgment on contract for services entered by the District Court of the United States for Porto Rico, are stated in the opinion.

*Mr. Hugo Kohlmann*, with whom *Mr. F. Kingsbury Curtis* and *Mr. Martin Travieso, Jr.*, were on the brief, for appellant:

Complainant had a full, adequate and complete remedy at law, and was not entitled to specific performance, accounting or any other equitable relief.

No fraud either legal or actual was alleged or proved. Even if it did exist, it would not be ground for equitable jurisdiction.

The contract was purely one of employment and not of a partnership.

No other ground of equitable jurisdiction existed in the case at bar.

Complainant's prayer for specific performance did not confer equitable jurisdiction.

The fact that complainant's compensation under the contract was fixed at a proportion of the profits realized by the defendant from the franchise did not entitle him to an accounting in equity.

The contract in suit being one for contingent compensation for services in procuring legislation, or other action by public bodies or officials, is against public policy and void and therefore not enforceable either in law or in equity.

The franchise or concession, in the profits of which appellee by reason of his contract claims to share, was declared forfeited by the executive council and appellant did not sell or purport to sell the same or make any profit thereon.

The contract in any event limited appellee's compensation to ten per cent. of the profit derived by appellant from the franchise itself, and there could be no recovery of the total price received by appellant for valuable lands and easements conveyed by the deed of June 1, 1905.

In support of these contentions, see *Ambler* v. *Choteau*, 107 U. S. 586; *Babbott* v. *Tewksbury*, 46 Fed. Rep. 86; *Berthold* v. *Goldsmith*, 24 How. 536; *Brown* v. *Equitable Life Assur. Society*, 142 Fed. Rep. 835; *S. C.*, 213 U. S. 25; *Busard* v. *Houston*, 119 U. S. 347; *Clippinger* v. *Hepbaugh*, 5 W. & S. (Pa.), 315; *Grieb* v. *Equitable Life Assur. Soc.*, 189 Fed. Rep. 498; *Hazelton* v. *Sheckells*, 202 U. S. 71; *Martin* v. *Wilson*, 155 Fed. Rep. 97; *S. C.*, 210 U. S. 432; *Meehan* v. *Valentine*, 145 U. S. 611; *Nutt* v. *Knut*, 200 U. S. 12; *Parkersburg* v. *Brown*, 106 U. S. 487; *Paton* v. *Majors*, 46 Fed. Rep. 210; *Providence Tool Co.* v. *Norris*, 2 Wall. 45; *Root* v. *Railway Co.*, 105 U. S. 189; *Safford* v. *Ensign Mfg. Co.*, 120 Fed. Rep. 480; *Scott* v. *Neely*, 140 U. S. 106; *Sussman* v. *Porter*, 137 Fed. Rep. 161; *Trist* v. *Child*, 21 Wall. 441; *United States* v. *Bitter Root Co.*, 200 U.S. 451; *Washburn & Moen Mfg. Co.* v. *Freeman Wire Co.*, 41 Fed. Rep. 410; *Weed* v. *Black*, 2 MacArthur (D. C.), 268; *Wood* v. *McCann*, 6 Dana (Ky.), 366.

*Barry* v. *Capen,* 151 Massachusetts, 99; *Boom Co.* v. *Patterson,* 98 U. S. 43; *Dunham* v. *Hastings Improvement Co.,* 57 App. Div. 426; *S. C.,* 118 App. Div. 127; *Houlton* v. *Nichol,* 93 Wisconsin, 393; *McBratney* v. *Chandler,* 22 Kansas, 482; *Mathewson* v. *Clarke,* 6 How. 122; *Minnesota Rate Cases,* 230 U. S. 352, 451; *Salinas* v. *Stillman,*. 66 Fed. Rep. 677; *Stanton* v. *Embrey,* 93 U. S. 548; *Taylor* v. *Bemiss,* 110 U. S. 42, relied upon by appellee can all be distinguished from this case.

*Mr. Frederic D. McKenney,* with whom *Mr. Edward S. Paine* was on the brief, for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity for an account under a contract between the parties, upon which the plaintiff (appellee), obtained a decree for $13,000 and interest. The contract was embodied in letters, as follows, according to the official translation: On October 30, 1898, Valdes wrote to Larrinaga reciting that he had applied for 'a water franchise from the river Plata, place called Salto, for the purpose of developing electric power,' while Larrinaga was Assistant Secretary of 'Fomento,' (now Department of the Interior), and going on, "So that you may help me in getting it through, and in all the rest in connection with said franchise, such as plans, projects, and in everything concerning the technical part thereof, I need a person of my absolute confidence, and as you deserve it fully to me, and not believing that this is inconsistent with your present position of Chief Engineer of Harbor Works, I propose to interest you in the profits of said concession in the amount of a 10%, provided that you accept the obligations hereinabove mentioned." The next day Larrinaga answered acknowledging the letter "Wherein you propose me a share of 10% in the property of the concession for the

utilization of waters from the La Plata River at the point called el Salto, near Comerio, I, in exchange to help you in the steps to be gone through and in everything in connection with said concession, such as plans, projects, and all what concerns to the technical part.—I hereby accept the participation of 10% of said concession in exchange of my personal or professional services without any obligation on my part" to contribute money to the exploitation.

It is objected in the first place that the case is not one for equitable relief. But whether the contract created a partnership under the definition of the Civil Code of Porto Rico, § 1567, as argued by the appellee, or not, it gave the appellee an equitable interest in the concession to the extent of securing his share of the profits, if any, and attached to these profits specifically if and when they came into being. *Barnes* v. *Alexander*, 232 U. S. 117, 121. It established a fiduciary relation between Valdes, who had legal control, and the plaintiff. The bill alleges an abuse of the relation by a secret transaction from which it is alleged that the profits accrued. It is a proper case for equitable relief.

It is contended more energetically that the contract was against public policy. We shall not speculate nicely as to exactly what the law was in Porto Rico at the time when the contract was made, but shall give the plaintiff the benefit of the decisions upon which he relies, such as *Hazelton* v. *Sheckells*, 202 U. S. 71. But we discover nothing in the language of the letters that necessarily imports, or even persuasively suggests any improper intent or dangerous tendency. Larrinaga had ceased to be Assistant Secretary, and while in that position had refused to take part in the plan. His answer, which must control if there is any difference, as the parties went ahead on it (*Minneapolis & St. Louis Ry. Co.* v. *Columbus Rolling Mill Co.*, 119 U. S. 149), binds him to help in the steps to be

gone through, and in the technical part. If his help in
the steps to be gone through was not to be, like the rest
of his work, in the technical part alone, still there is noth-
ing to indicate that it was of a kind that could not be
stipulated for. In view of the subject-matter, a grant,
it would seem to a riparian owner, of the right to use
water power for public service, the things done, such as
joining in an application to the Military Governor for a
franchise on the footing of a joint interest, or helping to
present it to the Secretary of War when it came up to him,
or preparing plans and specifications to be presented to
the Executive Council of Porto Rico when the first fran-
chise granted by the Secretary of War had been lost by
not complying with its terms, have no sinister smack.
We see nothing to control the decision of the District
Judge that the contract was not against the policy of the
law.

As we have intimated, the Executive Council of Porto
Rico was applied to after the loss of the first franchise, and
it granted a new one on December 17, 1900; but after
some extensions of time it declared the grant forfeited
in July, 1902. Valdes and the plaintiff, however, did not
admit the forfeiture, and Valdes procured the forma-
tion of a Maine corporation to take over his rights. On
January 14, 1905, he made a preliminary contract for the
sale of the franchise alleged to be forfeited and lands,
easements, and options for use in connection with the
same, reciting that he had petitioned for a new concession,
or confirmation of the franchise. For this he was to re-
ceive $27,000, par value, of the mortgage bonds of the new
company and $102,778, par value, of its stock, to be put
in escrow until the company got a good title to the water
rights and the franchise applied for. On June 1, 1905, in
pursuance of the contract, a conveyance was made of the
easements and lands that Valdes owned on the La Plata
and his right to construct works there on the terms above

mentioned, with a slight change of the figures, to $28,000 and $103,000 respectively. The franchise was granted on January 4, 1906, the grant expressly providing that it should not be deemed a recognition of any right of Valdes to any previous grant.

On these facts it is argued that the concession in which Larrinaga was interested was not sold by Valdes and was not the source of any profit. That Valdes purported to sell it by his conveyance, as he agreed to sell it by the contract which the conveyance referred to and executed, or else that his rights under it passed *sub silentio* with the land, we think admits of no doubt. And while it may be true that the sale would not be likely to have taken place without a confirmation or re-grant of the franchise, still, as between these parties, it seems fairly probable that there was a continuous pursuit of the end; that, while the franchise gave the value to the land, the land gave a *locus standi* to the franchise; that, notwithstanding the disclaimer of the Executive Council, the position of Valdes as riparian owner and previous grantee had their effect on the final grant; and that at all events when the contract was made on January 14, 1905, Larrinaga became entitled to receive his ten per cent. when that contract should be carried out.

The last objection to the decree is, that the court did not deduct from the sum paid the value of the other property which entered into the consideration. We do not think it clear that Larrinaga did not stipulate for ten per cent. of the land as well as of the franchise. The Spanish is not before us, and the words '10% in the property of the concession' well might mean that. At all events no error of magnitude is made out, and without mentioning every detail it is enough to add that no sufficient reason is shown why the decree should not be affirmed.

*Decree affirmed.*