## GEDDES v. REEVES COAL & DOCK CO.

Circuit Court of Appeals, Eighth Circuit.
June 6, 1927.

No. 7626.

1. **Liens** ⟨⇌⟩7—**Claim charged by contract on particular fund gives equitable lien on the fund.**

A contract under which one party is to receive compensation for services out of a particular fund, if and when realized, and which has been performed by such party, gives him an equitable lien on the fund when created in the hands of any one having notice of the contract.

2. **Receivers** ⟨⇌⟩77(1)—**Receivers held to hold fund subject to equitable lien of person who created it under a contract.**

By a written contract, signed by both parties, a dock company agreed to pay petitioner "50 per cent. of any refunds received by us from overcharges on freight bills delivered to him for auditing; this to be his only compen-

sation." Petitioner received and audited, with considerable labor, numerous freight bills, prepared and presented claims for overcharges against a railroad company, and had secured a tentative agreement for settlement when receivers were appointed for the dock company who employed another to prosecute the claim, with the result that a settlement was made and the receivers received the proceeds. Without the services rendered by petitioner no claim for refund could have been collected. *Held*, that the receivers took no better title to the claim than the dock company had which was subject to the contract; that petitioner had an equitable lien on one-half the fund received; which was held by the receivers in trust for him.

Appeal from the District Court of the United States for the District of Minnesota; Joseph W. Molyneaux, Judge.

George E. Geddes appeals from an order denying his petition for allowance of compensation under contract with defendant Reeves Coal & Dock Company. Reversed and remanded, with instructions.

Harold G. Simpson, of Minneapolis, Minn., for appellant.

M. H. Boutelle, of Minneapolis, Minn., and A. E. Boyesen, of St. Paul, Minn., for appellee.

Before SANBORN and BOOTH, Circuit Judges, and DAVIS, District Judge.

SANBORN, Circuit Judge. This appeal presents the question whether orders of the court below sitting in equity were just and equitable, whereby the appellant Geddes was denied any part of the sum of $5,430.78, which the receivers of the Reeves Coal & Dock Company were paid in 1925 by the Minneapolis, St. Paul & Sault Ste. Marie Railway Company in settlement of the Dock Company's claims for refunds for overcharges on freight bills which the Dock Company delivered to Mr. Geddes for auditing under this written contract between them made on March 11, 1919: "We agree to pay George E. Geddes fifty (50) per cent. of any refunds received by us from overcharges on freight bills delivered to him for auditing; this to be his only compensation. Reeves Coal & Dock Company. George E. Geddes."

The facts which condition the answer to this question are these. It is common knowledge that the auditing of such freight bills and overcharges is a tedious, laborious and difficult task and the contract reads that they were to be delivered to Mr. Geddes for auditing, not for collection, and he made no contract to collect them. The contract was that the Dock Company should pay to him 50 per cent. of any refunds received by it, not 50

20 F.(2d)—4

per cent. commission on them or a sum equal to 50 per cent. of them, but 50 per cent., one-half, of the very refunds the Dock Company received from the overcharges on the freight bills. Pursuant to the contract the Dock Company delivered to Mr. Geddes a large number of freight bills. He audited all of them. This practice continued from the date of the contract until on September 4, 1924, the court below sitting in equity appointed receivers of all the property of Dock Company to liquidate its obligations. During this time from March 11, 1919, until September 4, 1924, Mr. Geddes had faithfully endeavored to audit and collect these refunds. He had prepared and filed with the railroad company written claims for them. He had prior to December 6, 1924, filed informal complaints based on them with the Interstate Commerce Commission. If such complaints had not been so filed before December 6, 1924, these refunds could not have been collected. He had proceeded so far and with such success that he had negotiated a tentative settlement of the claims with the railroad company.

It was in this state of the case that on or about September 19, 1924, the receivers presented to the court below a petition to permit them to continue Mr. Geddes' employment under his written contract with the Dock Company and to pay him his share of the refunds specified in that contract. The court below denied the petition. Thereupon the receivers of the Dock Company employed Mr. Houck to prosecute these claims for these refunds. Mr. Houck filed a formal complaint on them with the Interstate Commerce Commission and then compromised the claims on the payment by the railroad company of $5,430.78. Thereupon Mr. Geddes by a petition which set forth his contract with the Dock Company and other pertinent facts prayed the court below for compensation for his services and the court below denied his petition and granted him no relief.

The result is that, although Mr. Geddes had a valid contract for one-half of the refunds that should be received by the Dock Company, or its representative or successor in interest, although he spent five years and much time and labor in the honest performance of his part of this contract and rendered services without which neither the receivers nor the general creditors of the Dock Company could ever have recovered this $5,430.78, or any part of it, that entire amount goes to the general creditors of the Dock Company and Mr. Geddes gets no compensation.

That this result is unjust to Mr. Geddes and inequitable is clear. All the proceedings in this case were in equity. The receivers were appointed by a court of equity. Neither the insolvency of the Dock Company nor the appointment of the receivers annulled or avoided Mr. Geddes' written contract with the Dock Company for he had performed his part as far as time and circumstances permitted and the receivers took the claims of the Dock Company he was prosecuting subject to his contract. They took no higher or better right or equity in them than the Dock Company had and they took its interest in the claims and in their proceeds subject to his contract and his equities and rights thereunder.

Conceding that there might have been facts and circumstances, none of which exist in this case, such as the failure of Mr. Geddes to perform his part of his contract as fairly and diligently as was reasonable, under which the court below in accord with the principles, rules and practice in equity might have taken the further performance of this contract and all the fruits of it from Mr. Geddes, granted them to another and authorized him to complete the performance of the contract without making any provision for the payment to Mr. Geddes for his services either out of the proceeds of the contract or otherwise, his counsel persuasively and earnestly argue that there were no such facts and circumstances in this case and that the action of the court in taking the performance of the contract and the proceeds from him and denying him compensation for the services he had rendered was not in accord but in disregard of the established principles, rules and practice in equity in such a case. [1] The general principles, rules and practice in equity applicable to this case have been stated by Pomeroy and his statement of them has been adopted and confirmed by repeated decisions of the Supreme Court and of other courts. He wrote: "Every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforcible against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice." 3 Pomeroy's Equity Jurisprudence, § 1235.

"It is well settled that an agreement to charge, or to assign, or to give security upon, or to affect property not yet in existence * * * or property to be acquired by him in the future, * * * does constitute an equitable lien upon the property so existing or acquired at a subsequent time, which is enforced in the same manner and against the same parties as a lien upon specific things existing and owned by the contracting party at the date of the contract." 3 Pomeroy's Equity Jurisprudence, § 1236.

And these are some of the cases that affirm, apply and illustrate these principles and rules and this practice: Wylie v. Coxe (1853) 56 U. S. (15 How.) 415, 418, 419, 420, 14 L. Ed. 753; Ingersoll v. Coram, 211 U. S. 335, 338, 339, 356, 357, 366, 367, 29 S. Ct. 92, 53 L. Ed. 208; Barnes v. Alexander, 232 U. S. 117, 121, 122, 34 S. Ct. 276, 58 L. Ed. 530; Valdes v. Larrinaga, 233 U. S. 705, 706, 707, 34 S. Ct. 750, 58 L. Ed. 1163; Kellogg v. Winchell, 51 App. D. C. 17, 273 F. 745, 746, 747, 16 A. L. R. 1159; American Surety Co. v. Finletter (C. C. A.) 274 F. 152, 154, 156; Pratt Lumber Co. v. T. H. Gill Co. (D. C.) 278 F. 783, 789, 790. These authorities seem to us to demonstrate the fact that the decisive issues in this case are not new, that they have been adjudged repeatedly by the Supreme Court of the United States and the other federal courts. In Wylie v. Coxe, 56 U. S. (15 How.) 415, 419, 420, 14 L. Ed. 753; Samuel Baldwin in the year 1842 had a claim against the republic of Mexico on account of personal outrages and loss of property he had suffered. John Baldwin, the brother of Samuel Baldwin, was the latter's agent and in that year he employed Coxe to prosecute this claim under an agreement that the latter should receive for his services a contingent fee of 5 per cent. out of the fund awarded, whether money or scrip, and that if nothing was obtained he should have no compensation. John Baldwin placed in the hands of Coxe the documents and papers connected with the claim and the latter brought it to the attention of the government of the United States urging an indemnity. He spent time and labor with the Secretaries of State and in written communications with them. War was declared against Mexico and in 1848 peace was declared. An act of Congress was passed and a board of commissioners was appointed to examine the cases and determine the amounts that ought to be allowed upon this and other like claims. He presented the papers pertaining to the claim to this board. Up to April, 1849, he had done everything that was done to induce

the government to get an indemnity or to prove the claim before the board. Samuel Baldwin, the owner of the claim, was a resident of Mexico. He died after making a will devising all his property to his wife and children and appointing her executrix. One Goix, the agent of the widow, dismissed Coxe as attorney in the case against Mexico. Wylie was appointed administrator of the estate of Samuel Baldwin, but he did not employ Coxe to continue his services in the case against Mexico, but prepared an independent memorial and presented it and other papers to the board which ultimately allowed in payment of the claim $75,000. Thereupon Coxe brought a bill in equity against the administrator who had taken charge of the property of Samuel Baldwin in the United States for his 5 per cent. of the final award and the court rendered a decree in his favor for the full amount of the contingent fee, or 5 per cent. of the $75,000 awarded.

The Supreme Court in reaching this decree necessarily decided: (1) That the executory contract to pay for the services of the agent toward enforcing the claim a contingent fee of a certain percentage of the recovery and no other compensation created an equitable lien upon the funds subsequently recovered; (2) that whoever receives that fund with notice of the contract holds it subject to the lien of or in trust for the agent; (3) that the contract creating the lien or trust cannot in equity be revoked after the agent has rendered substantial services under it, without providing adequate compensation to the agent; (4) that in such cases as this in hand and in the case of Wylie v. Coxe, the just compensation to the agent is that part of the fund or property realized specified in the original contract for compensation; and (5) that the death of the contractor does not avoid the contract or relieve the property of the contractor from the lien or trust imposed upon it thereby.

In Ingersoll v. Coram, 211 U. S. 335, 366, 367, 29 S. Ct. 92, 53 L. Ed. 208, decided by the Supreme Court in 1908, that court sustained and enforced in equity a contract between Robert G. Ingersoll and five of the heirs of Andrew J. Davis, whose will excluded them from sharing in his estate, to the effect that if Ingersoll would render his services to defeat the probate of the will and succeeded in defeating its probate they would pay him $100,000 out of their respective shares of the estate thereby saved to them, upon the ground that "upon all settled rules with reference to the construction of such in-

struments we cannot doubt that this one of August 17, 1891, created a lien on the funds therein referred to in behalf of Mr. Ingersoll," and cited Wylie v. Coxe and Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865.

In Barnes v. Alexander, 232 U. S. 117, 119, 121, 122, 34 S. Ct. 276, 58 L. Ed. 530, the agreement which was enforced in equity consisted of the oral statement of Barnes to Street and Alexander in these words, "If you will attend to this case I will give you one-third of the fee which I have coming to me on a contingent fee from Shattuck, Hanninger and Marks;" and the acceptance of that offer and attention to the case. The Supreme Court said at page 121 (34 S. Ct. 277) of that contract what is equally true of the contract in hand. "Obviously the only thing intended or desired was to give the appellees a claim to one-third of the fund received by Barnes if and when he should receive it. It is true that there was in a sense a res as to which present words of transfer might have been used. There was a right vested in Barnes unless discharged to try to earn a fee contingent upon success. But in a speculation of this sort the parties naturally turned their eyes toward the future and aimed at the fruits when they should be gained. They therefore used words of contract rather than of conveyance; but the important thing is not whether they used the present or the future tense but the scope of the contract. In this case it aimed only at the fund. Barnes gave no general promise of reward; he did not even give a promise qualified and measured by success to pay anything out of his own property, referring to the fund simply as the means that would enable him to do it. See National City Bank v. Hotchkiss, 231 U. S. 50, 57 [34 S. Ct. 20, 58 L. Ed. 115]. He promised only that if, when and as soon as he should receive an identified fund one-third of it should go to the appellees. But he promised that. At the latest, the moment the fund was received the contract attached to it as if made at that moment. It is an ancient principle even of the common law that words of covenant may be construed as a grant when they concern a present right. Sharington v. Strotton, Plowden, 298, 308; Hogan v. Barry, 143 Mass. 538 [10 N. E. 253]; Ladd v. Boston, 151 Mass. 585, 588 [24 N. E. 858, 21 Am. St. Rep. 481]. And it is one of the familiar rules of equity that a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing. Mornington v.

Keane, 2 De G. & J. 292, 313. Holroyd v. Marshall, 10 H. L. C. 191, 211."

[2] The rules, principles and practice in equity disclosed and affirmed by Pomeroy and by the opinions in the cases above cited have convinced (1) that Geddes had an equitable lien for his contingent compensation on the Dock Company' claim for refunds and their prospective proceeds until those proceeds were received by the receivers in equity and that from that time the receivers became and thereafter were the trustees of and for one-half of the amount they received on account of these claims for the refunds; (2) that the proceedings in the court of equity below, whereby after Geddes had labored faithfully for more than four years to perform his part of the contract, had rendered services without which nothing could ever have been realized from the Dock Company's claims for refunds, had satisfactorily performed his part of his contract and had reached a point where he had secured a tentative agreement of compromise and settlement with the railroad company, he was prevented from completing his work, without paying or securing to Geddes or enabling him to secure any compensation for his services, although the fruits of them paid to the receivers by the railroad company were $5,430.78, were in violation or disregard of the rules and practice in equity; those rules and that practice required that justice and fair compensation in view of his contract and his services should be secured and paid to him, Kellogg v. Winchell, 51 App. D. C. 17, 273 F. 745, 746, 747, 16 A. L. R. 1159, and cases there cited and cases cited above; (3) that the amount of compensation which under the facts and circumstances of this case in view of the contract, the equitable lien, the trust and the services of Geddes thereunder, ought to be paid to him by the receiver is 50 per cent. or one-half of the entire amount the railroad company paid to the receivers on account of the claims for the refunds, Wylie v. Coxe, 56 U. S. (15 How.) 415, 416, 420, 14 L. Ed. 753; Barnes v. Alexander, 232 U. S. 117, 121, 123, 34 S. Ct. 276, 58 L. Ed. 530.

The master and the court below cited to sustain the opposite view of this case: Trist v. Child, 88 U. S. (21 Wall.) 441, 22 L. Ed. 623; Christmas v. Russell, 81 U. S. (14 Wall.) 69, 20 L. Ed. 762; Wright v. Ellison, 68 U. S. (1 Wall.) 16, 17 L. Ed. 555; and other cases, which we have examined. But, upon consideration, like the Circuit Court of Appeals of the Third Circuit in American Surety Co. v. Finletter, 274 F. 152, 156, and Judge Kennamer in U. S. Fidelity & Guaranty Co. v. City of Bristow (D. C.) 4 F.(2d) 810, "we are inclined rather to the views of the same court [the Supreme Court] expressed in Ingersoll v. Coram, 211 U. S. 335, 29 S. Ct. 92, 53 L. Ed. 208, accepting the rule stated in Walker v. Brown, 165 U. S. 654, 17 S. Ct. 453, 41 L. Ed. 865, to the effect that an express executory contract in writing, whereby the contracting parties sufficiently indicate an intention to make some particular property or fund, therein described or identified, a security for a debt or other obligation, creates an equitable lien on the property so indicated." Our attention has also been called to the opinion of Judge Schoonmaker in Re George Walter & Sons (D. C.) 8 F.(2d) 267, 269. But that opinion is not in point, is not applicable to the facts of the case in hand or persuasive as to the order or decree that ought to be made in this case, for Judge Schoonmaker said: "There is no provision in the contract that this commission is to be paid out of the particular fund recovered, nor is there any provision in the contract assigning to the Board of Trade any part of the moneys received."

The court below in its opinion expressed the opinion that Geddes' contract would have created an equitable lien on any moneys recovered by him and paid to the Coal & Dock Company, but because he had not made such recovery at the time the receivers were appointed he was not entitled to an equitable lien upon the fruits of his contract and of his effective services under it when the fruits thereof were subsequently paid to the receivers. The answer to this view of the case is found in the opinions and decisions of the courts on this subject heretofore cited and in the contract itself. That contract was in writing. It read: "We agree to pay George E. Geddes fifty (50) per cent. of any refunds received by us from overcharges on freight bills delivered to him for auditing; this to be his only compensation." That contract bound the Dock Company and its successors in interest to pay to Geddes one-half of any refunds received by it or them from overcharges on freight bills delivered to and audited by him. It did not bind it to deliver to him any freight bills, it did not bind it to collect the refunds under the audited freight bills or to employ attorneys or agents to sue for or press those claims. All it bound the Dock Company to do was to pay one-half of any refunds it received from the overcharges on the audited bills if and when it received such refunds by whomsoever or by whatsoever means or services it might get them. On

the other hand that contract did not bind Mr. Geddes to do anything but audit the overcharges. It did not place any other condition upon the agreement that the Dock Company would pay to him one-half of the refunds derived from the claims for overcharges on the freight bills delivered to him. The contract is free from ambiguity, clear, plain. It is in writing, signed by the parties. No evidence was offered to modify or deny it. In such a state of a case Mr. Justice Mitchell of the Supreme Court of Minnesota admirably stated the applicable law in Thompson v. Libby, 34 Minn. 374, 377, 26 N. W. 1, 2, in these words:

"The only criterion of the completeness of the written contract as a full expression of the agreement of the parties is the writing itself. If it imports on its face to be a complete expression of the whole agreement—that is, contains such language as imports a complete legal obligation—it is to be presumed that the parties have introduced into it every material item and term."

Chief Justice Fuller in Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 517, 12 S. Ct. 46, 48 (35 L. Ed. 837), delivering the opinion of the Supreme Court, said: "And when the writing itself upon its face is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing." Cold Blast Transp. Co. v. Kansas City Bolt & Nut Co. (C. C. A.) 114 F. 77, 80, 81, 57 L. R. A. 696; Union Selling Co. v. Jones (C. C. A.) 128 F. 672, 674, 675; Silver King Coalition Mines Co. v. Silver King C. M. Co. (C. C. A.) 204 F. 166, 173, 174, Ann. Cas. 1918B, 571; Sioux Falls Nat. Bank v. Klaveness (C. C. A.) 264 F. 40, 42; Century Electric Co. v. Detroit Copper & B. R. Mills (C. C. A.) 264 F. 49, 51, 52; El Dorado Refining Co. v. Lientz (C. C. A.) 7 F.(2d) 814, 818.

Counsel for the receiver (one of the receivers having resigned since the payment) argue that the contract was revocable at any time before it was completely performed, that it was revoked by the appointment of the receivers and that thereafter Mr. Geddes had no equitable lien and the receipt by the receivers of the fruits of the contract did not charge his half of these fruits in the receiver's hands with any trust or lien in his favor. But, the receivership did not revoke, avoid or modify the contract, the equitable lien, or the trust. The receivers took the property of the insolvent subject to the contract, to Geddes' performance of his part of it, to his equitable lien on one-half of its fruits, and the receivers held Geddes' half of these fruits after they received them in trust for him. The receivers when appointed had no higher or better title or right in the claims for the refunds or their proceeds than the Dock Company had. The principles, rules and practice in equity forbade the revocation of the contract or the destruction of the equitable lien and right of Geddes to compensation for his services until full compensation therefor should be paid to him. No such compensation was made and when the fruits of his contract and services came to the receivers, the latter became trustees of one-half of them for Mr. Geddes.

In our opinion the order from which the appeal in this case was taken should be reversed and this case should be remanded to the court below with instructions to cause the receiver to pay to Mr. Geddes $2,715.39 and interest thereon at 6 per cent. from the time when the receivers received the $5,430.-78.