Van Duser & Liebschutz, of Rochester, N. Y. (Samuel B. Dicker and David H. Shearer, both of Rochester, N. Y., of counsel), for appellant.

Edwin T. Bean, and Richard W. Treverton, both of Buffalo, N. Y., and Gray & Gray, of Benton Harbor, Mich., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

### STRAIGHT SIDE BASKET CORPORATION v. WEBSTER BASKET CO., Inc.

### No. 165.

Circuit Court of Appeals, Second Circuit.

Feb. 17, 1936.

CHASE, Circuit Judge.

The plaintiff granted licenses to the defendant under patents covering machine attachments, for making baskets of the kind commonly used in packing and selling fruit, and processes of manufacture. The defendant manufactured baskets under the license agreements, but has paid only part of the royalties which have accrued in accordance with the terms of the licenses.

There are two causes of action. The first is based upon five licenses each for one machine attachment for making the so-called "Straight Side" type of basket. There is no dispute as to the amount due, provided the licenses are not invalid because in unlawful restraint of trade. The second cause of action is to recover a disputed amount claimed due under another license for making the "E-Z-Pak" basket. The plaintiff recovered on both causes of action, which will be discussed separately.

The defenses to the first cause of action are (1) invalidity and (2) breach by the plaintiff in failing diligently to prosecute infringers as agreed. A preliminary motion to strike out the first defense was denied before the case was tried on the merits by the court without a jury.

The plaintiff neither manufactures nor sells baskets, but licenses others, of which defendant is one, to do that under its patents. Each of the five licenses to the defendant provided that: "Licensee agrees not * * * to sell any such baskets for less than the fair market price thereof, and on such terms and conditions as Licensor may from time to time, decide are just and equitable." The plaintiff did from the first and until August 29, 1930, issue lists of prices at which the defendant should sell without any attempt to control prices beyond that. On the above date, however, it sent out what was called bulletin No. 18, in which it proposed to control the prices at which "authorized dealers" purchasing from the defendant might resell by requiring its licensees to enter into price-fixing contracts with such authorized dealers. It then requested the assent of the defendant to the proposed plan. The defendant did not agree to it and did not make any authorized dealer contracts in accordance with it. Later the plaintiff sent out several notices in which it insisted that the plan proposed for controlling sales by authorized dealers should be adopted and followed, but this defendant never did it. The trial court found that the licensee agreements at their inception were not illegal and that they did not become so by virtue of the plaintiff's efforts to have the defendant set up the authorized dealer plan.

■ The original licenses provided in the portion above quoted for the establishment of prices by the plaintiff at which the defendant might sell the baskets it made thereunder. That was lawful. E. Bement & Sons v. National Harrow Co., 186 U.S. 70, 22 S.Ct. 747, 46 L.Ed. 1058; United States v. General Electric Co. et al., 272 U.S. 476, 47 S.Ct. 192, 71 L.Ed. 362. The defendant consented to be bound by the prices established by the plaintiff in so far as its own sales were concerned, but it did not expressly agree to hold its purchasers to any price at which they might sell, although it may well be said that its agreement to sell only on such terms and conditions as the plaintiff might impose covered broadly its manner of selling the baskets made under the licenses. The point is that, as the agreement did not call for action by either party in violation of any law, the contract could be lawfully performed in full in accordance with its terms and so is to be taken to have embraced only lawful acts in the absence of proof to the contrary. The presumption is in favor of validity in order that the right of freedom of contract may be maintained. Steele v. Drummond, 275 U.S. 199, 48 S.Ct. 53, 72 L.Ed. 238; Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940; Valdes v. Larrinaga, 233 U.S. 705, 34 S.Ct. 750, 58 L.Ed. 1163. The defendant was bound to comply with the terms and conditions of sale imposed by the plaintiff only in so far as it was lawful to do so. That limitation upon the plaintiff's right to control the defendant's sales follows from the presumption of validity. Nor could the plaintiff modify the licenses to make the defendant's performance illegal without the defendant's consent either express or implied. W. T. Rawleigh Co. v. Lemon (Tex.Civ.App.) 247 S.W. 683. As the defendant never did consent to any modification, it is unnecessary to determine whether the plaintiff's ineffective attempt to have the defendant perform under the authorized dealers plan would, or would not, have made the license agreements unenforceable had the defendant agreed and acted accordingly. It is enough for present purposes that the licenses were valid as executed and remained unchanged.

■ The defendant's counterclaim for special damages is based upon allegations that the plaintiff failed to prosecute infringers with due diligence. The licenses were granted under patents No. 1,751,728 and No. 1,752,856, which were issued March 25, 1930, and April 1, 1930, respectively. This suit was brought March 4, 1932. Before that the plaintiff had instituted four actions for infringement, one of which had resulted in a consent decree for the plaintiff, and the others were still pending. The District Court decided that the defendant had failed to show the plaintiff's lack of due diligence in the prosecution of alleged infringers, and with that we agree.

■ The defense to the second cause of action upon the license granted by the E-Z-Pak Corporation, which assigned its interest to the plaintiff prior to this suit, consists of allegations that (1) the license was canceled and (2) that the amount of roy-

alty was reduced by a modification of the agreement. The trial court found against the defendant on both points. It is clear that there was no cancellation. There was, however, considerable correspondence between the parties looking toward a reduction in the amount of royalties, but that appears to have consisted of proposals and counter proposals, including conditions never agreed to, all of which left the original terms in effect during the period involved here. As there was substantial evidence to support the findings below, we accept them.

Judgment affirmed.