## No. 14,530.

### MITCHELL *v.* JONES.

(88 P. [2d] 557)

Decided March 27, 1939.

Mr. ERL H. ELLIS, Mr. MAX D. MELVILLE, Mr. FRED M. WINNER, for plaintiff in error.

Mr. W. D. McCLAIN, Mr. THOMAS R. RYAN, Mr. EDWIN A. WILLIAMS, for defendant in error.

*In Department.*

Mr. Chief Justice Hilliard delivered the opinion of the court.

A suit for an accounting on a written contract set forth in an amended complaint. The right to maintain the suit was challenged by demurrer on the ground that the contract was contrary to public policy and void. The demurrer was sustained, and plaintiff, electing to stand on his pleading, suffered judgment of dismissal. Omitting formal opening and closing, the amended complaint reads:

"First: That the defendant is now and during all of the times hereinafter mentioned has been a licensed architect, duly licensed to practice his profession in the State of Colorado.

"Second: That the plaintiff was formerly an employee of the Public Works Administration, which employment terminated on November 15, 1937, and long prior to any allotment of funds by the Public Works Administration for the public buildings hereinafter mentioned, and as such became exceptionally familiar with the requirements of the Federal Government and the Public Works Administration in making Public Works Administration grants and loans to municipalities, counties, school districts and other public agencies, and with the preparation of the applications necessary to secure possible approval and favorable action by the federal agencies.

"Third: That heretofore and on, to wit, July 9, 1938, plaintiff and defendant entered into the following written contract, which was dictated and prepared by the defendant and was executed by the plaintiff in the trade name, "Associated Consultants", he being the sole person represented by such trade name, to wit:

"This agreement, entered into by and between Lester Jones, licensed architect of the State of Colorado, with offices in the city of Denver, Colorado, and the Associ-

ated consultants, represented by Ben F. Mitchell, with offices in the City of Denver, Colorado.

"Witness: The Architect is desirous of employing the above named Consultants to perform for him certain services as hereinafter set forth, together with the terms of remuneration for said services. The Associated Consultants by their representative, Ben F. Mitchell, are desirous of accepting such employment under the terms herein set forth.

"1. The Architect is herein employing the Associated Consultants to contact certain Public Boards, which Boards are desirous of obtaining P. W. A. grants and loans, to erect public buildings, the duties of the said consultants, will be to diligently seek out such Boards or Organizations, and to the best of his ability endeavor to secure contracts for architectural services, including study drawings, plans and specifications, together with supervision. Such services are to be contracted on a basis mutually agreeable between the parties thereto.

"2. The duties of the Associated Consultants under this agreement, will be first as above stated; second, the preparation of all reports and data for submission to the P. W. A. office, and further all supervision necessary under the direction of the Architect, with the exception of such casual visits as is deemed proper and necessary by the Architect himself.

"3. Payment for this service will be consummated through a split of the fee obtained from the client for the architectural services. The Architect, Lester L. Jones, agrees that two-thirds of said fee will be remitted to the said Associated Consultants, and one-third to himself. Further, the parties agree that the travel expense of any trips made by the Architect will be deducted from the two-thirds portion payable to the Associated Consultants. And further that the Associated Consultants will pay from their two-thirds portion, any expense of supervision necessary over and above the casual visits of the Architect.

''In any case where supervision is employed, and such cases will exist in every job of any magnitude, the cost of such supervision will be paid from the portion of the Associated Consultants fee. This, however, is not to be confused with the Clerk of Works, normally employed by the applicant with the approval of the Architect, and paid by the applicant, and in all cases the said superintendent will be directly responsible to the Architect.

''The parties hereto fully agree to the foregoing stipulations.

''In witness whereof the parties hereto have hereon set their hands and seals this ninth (9th) day of July, 1938.

''Fourth: That thereupon, and in performance of said contract, the plaintiff contacted various public agencies, and after informing the members thereof that he was the representative and employee of the defendant, secured contracts for the architectural services of the defendant for such agencies. The said architectural contracts with said agencies were signed and executed by the defendant personally and by respective school boards, or boards of county commissioners, and contained the standard terms and provisions, and provided for payment to the defendant of the standard and customary fee of six (6%) per cent of the cost of the work, provided for in all such contracts for public works under the Public Works Administration and fully complied with his contract by preparing the application papers and data to the Public Works Administration. That the preliminary plans for the Minturn, Empire, and Brighton projects were not prepared by the defendant, but were arranged for by plaintiff with another architect.

''Fifth: That the contracts so secured by plaintiff for defendant as architect, except as hereinabove noted, are for the architectural services of the defendant in construction of the following public buildings, to wit: Brighton Court House Addition; Minturn School (Application pending); Empire School; Georgetown School;

Rand School (Rescinded); Granby School; Walden School.

"Sixth: That although plaintiff has fully performed all the provisions of said contract between the plaintiff and defendant, set forth in paragraph Three herein, on his part to be performed in connection with the above mentioned structures, the defendant has now repudiated said contract and is collecting all sums due for architectural services from the various public agencies engaged in the construction of said buildings, and now refuses to account to or pay over to the said plaintiff his share of the fees due under said contract.

"Seventh: That the defendant is wholly insolvent and it is necessary that a Receiver be appointed by this Honorable Court, in accordance with its equity practice, with full power to collect any and all sums falling due to the defendant under the terms of the contract with the various public agencies engaged in or about to engage in the public works mentioned in paragraph Fifth hereof, and preserve the same pending the final accounting between the parties hereto."

Considering plaintiff's allegations—the sole factual basis of our inquiry—Does the contract involved here necessarily import evil, or even persuasively suggest improper or dangerous tendencies? If not, as we are disposed to conclude, the demurrer should have been overruled. See *Valdes v. Larrinaga*, 233 U. S. 705, 34 Sup. Ct. 750, 58 L. Ed. 1163. At the date of the contract, as we are bound to notice, the Public Works Administration, an agency of the federal government, was in process of carrying out an act of Congress calculated to encourage the undertaking of public works, thereby to create demand for labor and material and thus effect a measure of relief to the body politic. Counties, municipalities, school districts and other public corporations constituted fruitful avenues through which the governmental purpose could be accomplished. Employment of an architect by the public entity engaged in a given enterprise

financed through grants and loans obtained pursuant to the act of congress, as the allegations indicate, was of the requirements of the regulations, and by the same authority the architect's compensation was definitely fixed—six per cent of the cost of the work. Defendant, an architect, knowing that plaintiff formerly had been employed by the Public Works Administration and was familiar with its requirements in the matter of applications for grants and loans under the act and administration regulations, engaged him to contact governing boards of public entities which might be procuring grants and loans, and endeavor to secure for defendant contracts for the architectural services necessarily to be provided by them in any undertaking of the kind. In addition, plaintiff was to assist entities, desirous of procuring grants and loans, in preparing application papers and data to be submitted to the Public Works Administration office in the interest of their purpose, and, under the direction of the architect, to supply necessary supervision of the work.

For plaintiff's services, defendant agreed that after deducting expense items mentioned in the contract from such proportion, he would pay plaintiff two-thirds of the architectural fees received as the result of contracts secured for him under their contract. It is alleged that plaintiff, proceeding under the contract upon which his suit is based, obtained for defendant several architectural contracts, for which defendant has collected, or is collecting, fees in accordance with the contracts so obtained for him. But, as is further alleged, defendant has repudiated his contract with plaintiff, and refuses to account for receipts arising from architectural engagements so obtained for him through plaintiff's instrumentality, or to make payment in any manner.

At the time the parties entered into the contract—held below to be contrary to public policy—the government was encouraging such entities as those mentioned in the amended complaint to engage in building enterprises.

Its purpose, as already remarked, was to create demand for labor and materials and thereby improve economic conditions throughout the country. In the administration of the law enacted to that end, care was taken that members of the architectural profession should enjoy participation in the projected activities. The arrangement in relation to architects, as plaintiff's allegations import, and as defendant evidently believed, was that on each of the construction units to which the Public Works Administration made grants and loans, the corporate entity engaged therein should employ an architect and pay him six per cent of the cost of the work. Considering that an architect was necessarily to be employed, and that his compensation was standardized—not subject to favor, we cannot think it was morally wrong for defendant architect to employ plaintiff to present him and his claims to excellence as an architect to the governing boards of public entities undertaking work within the contemplation of the act of Congress and its administrative regulations. Nor, the circumstances in mind, do we think it was incompatible to the public interest for plaintiff to undertake to be of assistance to governing boards in preparing and submitting applications and data to the Public Works Administration for grants and loans; and the agreement that plaintiff should supply supervision of the work has statutory authority. '35 C. S. A., c. 10, § 14.

In concluding that the contract here does not contravene public policy, we are not unmindful of *Russell v. Courier P. & P. Co.*, 43 Colo. 321, 95 Pac. 936, and *Oliver v. Wilder*, 27 Colo. App. 337, 149 Pac. 275, and the trenchant observations indulged in the disposition of the problems in those cases; but we do not regard them as in point. The parties to the contracts there flauntingly undertook to cause the state to pay unnecessary and excessive sums for printing, and to make division thereof in agreed proportions. As not infrequently occurs, men capable of conspiring to bilk the public, as in those two

instances, will turn and rend one another. In such cases courts of justice find it consistent to turn a deaf ear to their complaints of internecion destruction. The case here, as presently submitted, we think is without any "sinister smack," to quote the words of Mr. Justice Holmes in *Valdes v. Larrinaga, supra.* "Before a court should determine a contract which has been made in good faith stipulating for nothing that is malum in se, nothing that is made malum prohibitum, to be void as contravening the policy of the state, it should be satisfied that the advantage to accrue to the public for so holding is certain and substantial, not theoretical or problematical." *Kellogg v. Larkin,* 3 Pinney (Wis.) 123, 56 Am. Dec. 164.

If in truth there were evil considerations in the agreement involved here, or in the procurement of architectural contracts in the interest of defendant pursuant thereto, defendant may answer to that effect, as well as to the merits, and in the light thereof judicial pronouncement then will be made.

Let the judgment be reversed, the demurrer to be overruled.

MR. JUSTICE YOUNG and MR. JUSTICE KNOUS concur.