[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case concerns a third party complaint brought by Gerardo DiPietro, d/b/a DiPietro Contracting[1], against Edward Kopowski, an architect, arising out of their relationship on four construction projects.[2] DiPietro seeks an accounting from Kopowski in connection with work both parties performed on projects for UCONN Health Center (UCONN), the Elmwood Community Center (Elmwood), Newington High School (Newington) and the Burritt Hill Funeral Home (Burritt Hill).[3] The matter was tried to the court on September 28, 2000, and October 20, 2000. The evidence presented by the third party plaintiff included his own testimony and that of Bruce Wazorko, a certified public accountant, and documents which were entered into evidence as full exhibits which include the contracts for the Burritt Hill, Newington and Elmwood projects; (Plaintiff's Exhibits 1 — 3, respectively); a financial statement of the four projects as of April 30, 1996; (Plaintiff's Exhibit 4); and the original checks drawn to Kopowski in connection with all four projects; (Plaintiff's Exhibits 5a-g, 6a-c, 7a-e, 8a-c.) Kopowski presented his own testimony and documents which were entered into evidence as full exhibits which include Kopowski's federal income tax returns for the years 1994, 1995 and 1996; (Defendant's Exhibits A — C, respectively); the Builder's Hardware credit application; (Defendant's Exhibit D); DiPietro's federal income tax returns for the years 1993, 1994 and 1995; (Defendant's Exhibits G, H I); some original checks drawn to DiPietro or DiPietro Contracting; (Defendant's Exhibits J (1) — (5)); and a record of deposits and checks paid in connection with the Burritt Hill Project; (Defendant's Exhibit K.) CT Page 13054
Pursuant to the third party complaint and his testimony, DiPietro claims that he and Kopowski were partners in a business, created by oral agreement, in 1993, known as DiPietro Contracting. In accordance with the terms of the partnership, the parties were to share profits and losses in all four projects, which Kopowski has failed to do. DiPietro seeks an accounting and payment on the amount found to be due him.
 I
Based on the testimony and the full exhibits, the court finds the following facts: The parties had some type of agreement whereby each performed work on four projects which included UCONN, Elmwood, Newington and the Burritt Hill. DiPietro did the sitework without submitting bids which included providing labor and equipment and obtaining insurance and bonding on at least three of the four projects. DiPietro was paid in full for all the site work he performed. (Transcript, pp. 9-11, 78; Plaintiff's Exhibit 4.) Kopowski was the supervisor or construction manager on all four projects. (Transcript, pp. 12, 188.) The bills relating to the four projects were sent to DiPietro's residence at 16 Selander Street, New Britain, Connecticut. DiPietro signed all the checks, maintained control of the checkbook and the statements which came to his home. (Id., 76, 84.) DiPietro's concept of his and Kopowski's relationship was that DiPietro would be paid separately for the site work and then he and Kopowski would share the profits and/or losses relating to the particular job. (Id., 11.)
Bruce Wazorko is an accountant who was retained by DiPietro. He has done work for DiPietro since the end of 1993. He prepared a financial statement which indicates it is for DiPietro Contracting as of April 30, 1996, but which is only a summary of information relating to the four projects that are subject of this lawsuit. (Plaintiff's Exhibit 4; Transcript, pp. 123-26.) Wazorko relied on the contracts for the four projects and a computerized summary of disbursement and receipt runs for the UCONN, Newington and Elmwood projects; (Plaintiff's Exhibit 9); and incomplete information for the Burritt Hill project; (Defendant's Exhibit K); in recording the income to Kopowski and DiPietro reflected on the financial statements. (Transcript, pp. 109-10, 132-33, 172-75.) There were no tax returns filed for the partnership nor any other tax forms filed in connection with any of the four projects. There was no ledger reflecting accounts receivable and accounts payable maintained in connection with the four projects from which the accountant could prepare the financial statements, which is why he had to rely on the contracts and the computerized runs prepared by Kopowski. (Id., 163.) The designations on the financial statements distinguishing monies paid to Kopowski for consulting" and "administration" were adopted by Wazorko from information supplied by Kopowski. (Plaintiff's Exhibit 4.) Wazorko CT Page 13055 himself supplied the designation of "partners' draws" used on the financial statements. (Transcript, p. 164.) A partner's draw was meant by Wazorko to mean an advance against profits. (Id., 169.)
Wazorko prepared tax returns for DiPietro for 1994 and 1995, which indicated that DiPietro Contracting was a sole proprietorship. (Defendant's Exhibits H I; Transcript, p. 165.) Kopowski had a different accountant prepare his tax returns and he listed his business as an architect as a sole proprietorship for the same years. (Defendant's Exhibits A B; Transcript, p. 225.)
The contract for the Burritt Hill project lists DiPietro Contracting as the contractor and Z. Edward Kopowski as the architect on the first page of the contract. Both DiPietro and Kopowski signed on behalf of DiPietro Contracting on the signature page of the contract. (Plaintiff's Exhibit 1, p. 8.) Neither the Newington contract nor the Elmwood contract mentions Kopowski's name anywhere in the document.[4] (Plaintiff's Exhibits 2 3.) Only Gerardo DiPietro signed on behalf of DiPietro Contracting, as contractor, for the Newington project contract on the signature page. (Plaintiff's Exhibit 2, p. 8.) Gerardo DiPietro is listed as the contractor on the Elmwood contract, which he signed in his individual name on the signature page. (Plaintiff's Exhibit 3, p. 8.)
Payments were made to Kopowski in connection with each of the projects and were noted as being for "consulting" or "consulting and administration." Including the payments for site work, the total payment to DiPietro on the four projects was greater than that to Kopowski. DiPietro was paid a total of $73,763, and Kopowski was paid a total of $58,484. On the UCONN project, DiPietro was paid a total of $7600 (administration), and Kopowski was paid $6500 (administration and consulting). On the Newington project, DiPietro was paid $21,750 (administration), and Kopowski was paid $21,500 (administration and consulting). On the Elmwood project, DiPietro was paid $20,163 (sitework), and Kopowski was paid $7234 (consulting). On the Burritt Hill project, DiPietro was paid a total of $24,250 (sitework and walks), while Kopowski was paid a total of $23,250 (consulting and administration). (Plaintiff's Exhibits 4 and 9; Defendant's Exhibit K.)
Beyond the foregoing, the remaining facts are inconclusive even after trial. Kopowski testified as follows: He is an architectural consultant and a construction manager. (Transcript, p. 188.) He was the construction manager on all four projects. (Id., 188, 198.) Kopowski supervised the subcontractors, ordered materials and coordinated construction. (Id., 198.) His consulting services include preparation and reviewing of bids, estimating materials and supervising the construction site. (Id., 201.) Administration included spending time on the construction site, reviewing CT Page 13056 the progress and meeting with owners. (Id., 202.) Kopowski claims he was an employee of DiPietro hired to work on these four projects but had no specific agreement with him. (Id., 205-06.) He requested payment for his services based on the number of hours he spent on the job. (Id., 221.) He kept time sheets but did not share them with DiPietro or Wazorko and did not submit vouchers. (Id., 207, 221.) His hourly rate was $75 per hour for all four projects. (Id., 221-22.) He claims that the amount of money paid to DiPietro for the sitework was excessive for the amount of time spent and work performed but he never questioned DiPietro's numbers and never obtained quotes from other parties. (Id., 200.) DiPietro never questioned the amount of the payments to Kopowski at the time the payments were made. (Id., 201.) Kopowski never hired Wazorko as an accountant and never saw the financial statements included in Plaintiff's Exhibit 4 before the trial. (Id., 188-89.) Kopowski does not recall if he ever spoke to Wazorko on the telephone, but he never met with him. (Id., 189.) Kopowski prepared the "check runs"; (Plaintiff's Exhibit 9 and Defendant's Exhibit K); as the checks were written. Kopowski was present when DiPietro's daughter drew the checks in connection with the four projects, and he made notes at the time. (Transcript, p. 191, 193-94.) Kopowski prepared the "check runs" for DiPietro, not the accountant. (Id., 189.) Kopowski would meet with DiPietro at DiPietro's house every time they received a payment, which was approximately once a month. (Id., 192.)
 II
DiPietro argues that he and Kopowski had a partnership agreement in connection with the four building projects that are the subject of this lawsuit. Kopowski maintains that they had "no formal agreement."
The Connecticut Supreme Court has held that "[to] find a true partnership, a mutual agency relationship is essential." Travis v. St.John, 176 Conn. 69, 72-73, 404 A.2d 885 (1978). The court looks to parties' intent when determining the nature of an association. Id., 73. Alternatively, "[o]ur case law has long recognized that a joint venture . . . exists where two or more parties combine their property, money, efforts, skill or knowledge in some common undertaking. . . . The relationship between contracting parties cannot amount to a joint venture unless the parties so intend. . . . Generally, joint ventures relate to a single transaction, whereas partnerships exist for a general business. . . . Partnerships, however, may also exist for the sole purpose of a single transaction." (Citations omitted; internal quotation marks omitted.) Doe v. Yale University, 252 Conn. 641,672-73, 748 A.2d 834 (2000).
An "accounting" is defined as an "adjustment of accounts of the parties CT Page 13057 and a rendering of a judgment for the balance ascertained to be due." 1 Am.Jur.2d, Accounts and Accounting § 52 (1994). "In Strang v.Witkowski, 138 Conn. 94, 101, 82 A.2d 624 (1951), an accounting was ordered when an independent salesman sought commissions from a partnership for work done for customers secured by him. See also Stanleyv. M.H. Rhodes, Inc., 140 Conn. 689, 103 A.2d 143 (1954). It was also the proper remedy when an inventor demanded royalties due to him pursuant to an agreement. Rockwell v. New Departure Mfg Co., 102 Conn. 255,308-309, 128 A. 302 (1925). Again, in Valdes v. Larrinaga, 233 U.S. 705,34 S.Ct. 750, 58 L.Ed. 1163 (1914), the plaintiff helped the defendant secure a franchise in return for a promise of a percentage of the profits. When the defendant breached the agreement, the plaintiff sued for an accounting. The court concluded that a fiduciary relationship existed between the parties and that the plaintiff had "`an equitable interest in the [franchise] to the extent of securing his share of the profits, if any. . . . It is a proper case for [an accounting].'" C S ResearchCorp. v. Holton Co., 36 Conn. Sup. 619, 621-22, 422 A.2d 331 (1980) (Appellate Session).
DiPietro's claim for an accounting is dependent on proof of the existence of a partnership. Connecticut has adopted the Uniform Partnership Act which is instructive in discerning whether, based on the evidence presented, the relationship between DiPietro and Kopowski is a partnership. General Statutes § 34-314 (a), concerning the formation of a partnership, provides in pertinent part: "[T]he association of two or more persons to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership." General Statutes § 34-314 (c) provides in pertinent part: "In determining whether a partnership is formed, the following rules apply: . . . (3) A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment . . . (B) for services as an independent contractor or of wages or other compensation to an employee. . . ."
The court finds that DiPietro has failed to establish his claim by a preponderance of the evidence. There is no basis in the evidence for the court to reach any definitive conclusion as to the relationship between DiPietro and Kopowski. Although it is reasonably clear from the testimony and exhibits what the division of labor was, the precise relationship between the parties is unclear. There was no name for the partnership which is referred to at various times as "DiPietro Contracting" or "DiPietro," but separate records were kept for the four projects. (Transcript p. 69.) They did not obtain a tax identification number. The checking account was separate and in the single name of"DiPietro." (Id.) DiPietro did not maintain separate liability insurance for the partnership. (Id., 96.) There were no tax returns filed by the partnership CT Page 13058 entity. (Id.) Neither DiPietro nor Kopowski received a W-2 or Form 1099 from this entity. For the tax years 1994 and 1995, the only tax years in which the parties engaged in work on the four projects and received income; (see Plaintiff's Exhibits 4 — 8 and Defendant's Exhibit J); each individual filed a Schedule C indicating that he was the sole proprietor of a business.[5] DiPietro listed his business as DiPietro Contracting and Kopowski indicated he was an architect who listed his business as "K Associates" on his 1994 tax return; (Defendant's Exhibit A); and left the business name blank on his 1995 tax return. (Defendant's Exhibit B.)
DiPietro and Kopowski did at least four other jobs together that DiPietro does not claim to be included in the partnership. (Transcript, p. 75.) DiPietro supplied the equipment and at least two laborers for the sitework on three of the four jobs that are the subject of this lawsuit.[6] He also obtained the insurance and bonds for each of the jobs. He was paid separately for the sitework. (Id.,9-11, 78.) Kopowski acted as the general contractor or construction manager on each job. (Id., 80, 188.) He ordered materials, met with the owners, hired the subcontractors and appeared on the site. (Id., 201.) DiPietro also operated a separate business which used the name of DiPietro Contracting, at the time the four projects were going on with Kopowski. (Id., 82.) DiPietro testified that the checks to Kopowski were for Kopowski's share of the profits and Kopowski testified that these were payments to him as an independent contractor for administration and consulting. Although DiPietro claims they were to split the net profit fifty-fifty, he did not establish how the net profit was determined except to say that he got fifty-fifty plus payment for whatever sitework was done on each project. As the financial statement and checks in evidence reflect, payments were made over a series of months while the projects were ongoing, making it unclear at what point in time the "net profit" was determined. In fact, DiPietro testified that if Kopowski requested a draw while a project was in progress and the receipts from that project were insufficient to cover the draw, DiPietro would essentially advance Kopowski the money for the draw based on anticipated profits. (Id., 56, 58.) Total "advance payments" to Kopowski for the four projects was $58,484. (Id., 160.) According to DiPietro's theory of the case, he received $35,750 for "advance payments" and $38,013 for site work, for a total of $73,763. (Id., 59; Plaintiff's Exhibit 4.)
DiPietro was confusing and inconsistent in his testimony regarding his relationship with Kopowski, which may be attributable in significant part to an unreliable memory. DiPietro's testimony was contradicted in part not just by Kopowski but also by Wazorko who was called as a witness by DiPietro and who has been his accountant since 1994. The cover letter CT Page 13059 from Lardie, Wazorko Company, P.C., to the April 20, 1996 financial statement is addressed to Gerardo DiPietro only and indicates that it is intended solely for the use of DiPietro Contracting and Edward Kopowski. Clearly, even the accountant did not understand DiPietro and Kopowski to be partners in DiPietro Contracting. Although Wazorko testified that he distinguished payments to DiPietro for sitework on the financial statements for the four projects by using an asterisk because they were payments for "services rendered" as opposed to payments which were so-called partners' draws, he made no such distinction for the payments which Kopowski designated were for "administration" and "consulting" and considered all the payments to Kopowski as "draws." (Id., 169.)
Neither the testimony of DiPietro or Kopowski was very credible or reliable. DiPietro and Kopowski obviously had some type of profit and expense sharing relationship that extended beyond the four projects that are the subject of this lawsuit. It is not credible that Kopowski got paid for his time (as Kopowski testified), yet did not provide any record of it to DiPietro. Further, there is no explanation as to why Kopowski would have contributed $10,000 to the Builder's Hardware balance when he was neither a responsible party on the credit agreement nor named by Builder's Hardware as an original defendant in the lawsuit. On the other hand, DiPietio's testimony that it was Kopowski who obtained the credit line with Builder's Hardware is not credible because the application contains only DiPietro's signature and seeks credit for Gerardo DiPietro, individually. (Transcript, p. 96; Defendant's Exhibit D.) The parties did not conduct themselves like partners. There was only scant evidence of a mutual agency relationship. The financial statement on the status of the projects as of April 30, 1996; (Plaintiff's Exhibit 4); does not reflect an intent to draw money equally.
Kopowski further undermined his credibility by claiming that he was an employee of DiPietro when he never received a W-2 or a Form 1099 and reported to the Internal Revenue Service that he was the sole proprietor of his own business. (Transcript, p. 205; Defendant's Exhibits G, H I.) In addition, he signed the Burritt Hill project contract on behalf of DiPietro Contracting along with DiPietro.[7]
Nevertheless, the fact that the testimony of Kopowski was lacking in credibility is not sufficient to carry the day for DiPietro's claim of a partnership. There are far too many holes in DiPietro's testimony and in the documentary evidence presented to establish his claim of partnership by a preponderance of the evidence. Although DiPietro claims that as of April 30, 1996, there were outstanding accounts payable in the amount of $39,180 and that Kopowski is responsible for 50 percent of it, or $19,590, there is nothing in the record to reflect that $39,180 is still outstanding or that DiPietro paid all or part of it. The only payment CT Page 13060 after April 30, 1996, for which there is evidence is the payment of $26,961, which was made to Builder's Hardware. (Transcript, p. 36.) Both Kopowski and DiPietro each contributed $10,000 toward this amount, and the balance was paid from the Elmwood project retainage. See footnote 2. Payments to DiPietro, including the sitework, amount to $73,763. The sums paid to DiPietro exceed the total "draws" of $58,484 paid to Kopowski by $15,279, which persuades the court that neither evidence nor equity supports DiPietro's claim.
For all the foregoing reasons, the court finds that DiPietro has failed to prove his claims by a preponderance of the evidence. Therefore, judgment is hereby rendered in favor of the defendant.
Peck, J.